# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

LAZARO MARES,

      Plaintiff,

v.                                      CIV 18-0004 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 19*) filed on June 6, 2018. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 6, 7, 8.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-taken and will be denied.

## I.    Procedural History

On January 18, 2011, Mr. Lazaro Mares ("Plaintiff") protectively filed an application with the Social Security Administration for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Administrative Record[1] (AR) at 175, 252. Plaintiff alleged a disability onset date of October 13, 2010. AR at 252. Disability Determination Services ("DDS") determined that Plaintiff was not disabled both initially

---

[1] Document 13 contains the sealed Administrative Record. *See Doc. 13-1 to 13-16.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

(AR at 175-76) and on reconsideration (AR at 177-86). Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") on the merits of his SSI application. AR at 200.

Both Plaintiff and a vocational expert ("VE") testified during the *de novo* hearing. *See* AR at 146-74. ALJ Ann Farris issued an unfavorable decision on September 13, 2013. AR at 122-31. Plaintiff submitted a request for review to the Appeals Council (AR at 117), along with additional evidence (AR at 7). The Council denied review on March 31, 2015 (AR at 1-6) making the ALJ's decision the final decision of the Commissioner (*Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003)).

On May 14, 2015, Plaintiff filed a Complaint in federal court. AR at 950-51. Judge Vidmar granted Plaintiff's Motion to Reverse and Remand for Rehearing with Supporting Memorandum on July 25, 2016, finding that the ALJ failed to apply the correct legal standards in evaluating the opinions of Plaintiff's treating physician, Dr. Zieser, and that the ALJ's one reason for rejecting Dr. Zieser's opinion was not supported by substantial evidence. AR at 952-68.

Plaintiff filed a subsequent application for Title XVI SSI on May 7, 2015, again alleging a disability onset date of October 13, 2010. AR at 980, 1128. DDS again determined that Plaintiff was not disabled both initially (AR at 980-90) and on reconsideration (AR at 991-1004). Plaintiff requested a hearing with an ALJ (AR at 1079-81). In light of Judge Vidmar's Order of Remand on Plaintiff's first application, the Appeals Council ordered the ALJ to consolidate the claims on both applications and issue a new decision, after a new hearing, on the consolidated claims. AR at 973-74.

ALJ Farris held a second *de novo* hearing on September 21, 2017 at which both Plaintiff and a VE testified. AR at 897- 924. On November 2, 2017, ALJ Ann Farris

issued a partially favorable decision, finding Plaintiff disabled as of June 1, 2015. AR at 869-79. On this remanded case, Plaintiff did not file exceptions disagreeing with the ALJ's decision, and the Appeals Council did not assume jurisdiction within 60 days of the date of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1484.

## II.    The ALJ's Findings and Applicable Law

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity ("RFC"), he is unable to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of his medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); *see also* 20

C.F.R. § 416.945(a)(1). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient . . . RFC to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. § 416.920(a)(4)(v).

At Step One of the process, ALJ Farris found that Plaintiff "has not engaged in substantial gainful activity since the alleged onset date." AR at 871 (citing 20 C.F.R. § 416.971). At Step Two, the ALJ concluded that "[s]ince the alleged onset date of disability, October 13, 2010, [Plaintiff] has had the following severe impairments: obesity, asthma, and degenerative disc disease with mild scoliosis." AR at 871. The ALJ further concluded that, "[b]eginning on the established onset date of disability, June 1, 2015, [Plaintiff] has had the follow severe impairments: obesity, asthma, degenerative disc disease with cervical stenosis, and carpal-tunnel syndrome." AR at 871 (citing 20 C.F.R. § 416.920 (c)). The ALJ found three of Plaintiff's impairments, diabetes, depressions, and GERD, to be non-severe. AR at 872.

At Step Three, the ALJ found that "since the alleged onset date of disability, October 13, 2010, [Plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 872 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926). In making her determination, ALJ Farris considered Listings 1.04 (disorders of the spine) and 3.03 (asthma). AR at 872. She also considered the effects of obesity combined with other medically determinable impairments including

4

musculoskeletal, respiratory, and cardiovascular under Listings 1.00Q, 3.00L, and 4.00F. AR at 873.

In determining Plaintiff's RFC, ALJ Farris found that while Plaintiff's "medically determinable impairments might be expected to cause the alleged symptoms[,] . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not supported prior to June 1, 2015." AR at 876. The ALJ considered the evidence of record as well as statements by Plaintiff and his mother and the opinions of Plaintiff's treating and consultative physicians. AR at 873-76. Ultimately, the ALJ found that, prior to June 1, 2015, Plaintiff had the residual functional capacity

> to lift no more than 10 pounds at a time, sit for approximately six hours in an eight-hour workday and stand or walk for no more than two hours in an eight-hour workday. He could occasionally balance, stoop and climb stairs but never kneel, crouch or crawl. He needed to avoid environmental hazards such as unprotected heights and could have only moderate exposure to pulmonary irritants. He could have occasional interaction with the public. [The ALJ found] that this is a limited range of work contained in the sedentary exertional levels as defined by 20 C.F.R. § 404.156, 20 C.F.R. § 416.967 and SSR 83-10.

AR at 873. ALJ Farris further found that, beginning on June 1, 2015, Plaintiff has the residual functional capacity

> to lift no more than 10 pounds at a time, sit for approximately six hours in an eight-hour workday and stand/ walk for less than two hours in an eight-hour workday. He can occasionally balance, stoop and climb stairs but never kneel, crouch or crawl. He can occasionally handle and finger. He should avoid environmental hazards such as unprotected heights and can have only moderate exposure to pulmonary irritants. [Plaintiff] can have occasional interaction with the public and requires the option to alternate between sitting and standing at will. [The ALJ found] that this is a limited range of work contained in the sedentary exertional level as defined by 20 C.F.R. § 404.156, 20 C.F.R. § 416.967 and SSR 83-10.

AR at 876.

At Step Four, ALJ Farris concluded that Plaintiff has been unable to perform any past relevant work since his alleged disability onset date of October 13, 2010. AR at 877 (citing 20 C.F.R. § 416.965). At Step Five, the ALJ found that, prior to June 1, 2015, Plaintiff was able to perform work as a table worker, document preparer, and addresser. AR at 878. But, beginning on June 1, 2015, the ALJ found that "there are no jobs that exist in significant numbers in the national economy that the claimant can perform." AR at 878 (citing 20 C.F.R. §§ 416.960(c), 416.966). The ALJ ultimately determined that Plaintiff "was not disabled prior to June 1, 2015, but became disabled on that date and has continued to be disabled through the date of this decision." AR at 879 (citing 20 C.F.R. § 416.920(g)).

## III.    Legal Standard for Review

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)).

The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV.    Discussion

Plaintiff asserts two issues in his Motion. First, he argues that the ALJ "failed to perform the requisite analysis under *Trimiar* for cases with [a] borderline number of jobs." *Doc. 19* at 1. Second, he contends that the ALJ "failed to engage in a function-by-function assessment of [Plaintiff's] work-related abilities relating to (1) the seven strength demands, (2) the limiting effects of [Plaintiff's] obesity, and (3) [Plaintiff's] non-exertional mental limitations, contrary to 20 C.F.R. § 416.1470(b) and SSR 96-8p." *Id.*

### A.    Substantial evidence supports the ALJ's finding that jobs which Plaintiff could have performed existed in significant numbers in the national economy.

The Commissioner has the burden at Step Five to show that the plaintiff retains an RFC to perform jobs that exist in significant numbers in the regional or national economy. *Haddock v. Apfel*, 196 F.3d 1084, 1088-89 (10th Cir. 1999). In this case, at the hearing before the ALJ, VE Weber testified that a person with the same age,

education, work history, and initial RFC as Plaintiff could perform the duties of a table worker, document preparer, and addresser. AR at 921-22. She testified that, within the national economy, there were 2,900 jobs as table worker, 47,000 jobs as document preparer, and 6,000 jobs as addresser, for a total of 55,900 jobs. AR at 921-22. Relying on this testimony, the ALJ found that these jobs existed in significant numbers in the national economy. AR at 878. Plaintiff, however, argues that the total number of jobs is so borderline to a significant number that the ALJ was required to conduct a *Trimiar* analysis, which she did not do.

In *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992), the Tenth Circuit noted a number of factors courts may consider in evaluating whether the number of **regional** jobs is significant, "including: (1) the level of claimant's disability; (2) the reliability of the vocational expert's testimony; (3) the distance claimant is capable of traveling to engage in the assigned work; (4) the isolated nature of the jobs; and, (5) the types and availability of such work." *Padilla v. Berryhill*, No. 16-106 KK, 2017 WL 3412089, at *11 (D.N.M. Mar. 28, 2017) (citing *Trimiar*, 966 F.2d at 1330). However, I previously concluded "that the *Trimiar* analysis does not extend to the question of whether there are significant numbers of **nationally** available jobs that a claimant can perform." *King v. Berryhill*, No. CV 16-1147 KBM, 2018 WL 851358, at *14 (D.N.M. Feb. 12, 2018).[2] Indeed, the *Trimiar* factors "seem[] quite logical in the context of assessing truly

---

[2] Plaintiff's attorney, Michael Armstrong, also represented the plaintiff in *King*, yet he failed to acknowledge my previous holding as it applies to his current argument. In fact, Plaintiff fails to cite a number of other cases in which his attorney, Michael Armstrong, made the same argument and was rejected by other judges in this District. *See Garcia v. Berryhill*, No. 16-cv-1266 SCY, 2018 WL 1620922, at *4 (D.N.M. Mar. 31, 2018); *Rodriguez v. Berryhill*, No. 16-1059 SCY, 2018 WL 1627209 (D.N.M. Mar. 31, 2018).

'available' jobs regionally. Where the focus is on national availability of jobs, however, the particularized *Trimiar* inquiry would confuse the issues." *Id.* at *13.

True, Judge Browning of this District has remanded a case directing the ALJ to consider the *Trimiar* factors for jobs with borderline numbers in the national economy. *See Sida v. Soc. Sec. Admin.*, 349 F. Supp. 3d 1149, 1164-65 (D.N.M. Oct. 29, 2018). However, in *Sida*, Judge Browning found an error with one of the jobs identified at Step Five. *Id.* at 1162-63. Accordingly, he looked at the remaining job under a harmless error analysis, not substantial evidence, to determine if the ALJ's Step Five determination could still support a finding of no disability. *Id.* at 1163-64. Using the harmless error analysis, Judge Browning could not say that "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way," and remanded the case for the ALJ to consider the *Trimiar* factors. *Id.* at 1164-65 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)). Judge Browning used the same harmless error analysis to remand the case in *Sears v. Berryhill*, No. 17-cv-0391 JB/KBM, 2018 WL 2002487, at *9 (D.N.M. April. 20, 2008). Yet in *Sears*, Judge Browning agreed "that the *Trimiar* factors are best applied when regional jobs are at issue." *Id.* at *8.

In any event, here, the harmless error analysis does not apply because the Court finds no reason to discount any of the three jobs identified by the VE. Rather, the Court must determine if substantial evidence supports the ALJ's determination that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy," prior to June 1, 2015. AR at 878. It is proper for the ALJ to look only at the number of jobs that exist in the national economy to determine

disability. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). The Tenth Circuit has not drawn any bright-line rules on what constitutes a significant number, but instead has held that "the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and, most importantly, that the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Allen*, 357 F.3d at 1144 (quotations omitted).

The Ninth Circuit specifically found that "25,000 jobs meets the statutory standard" as a nationally significant number if the jobs are available in several regions of the country. *Gutierrez v. Comm'r of Soc. Sec.,* 740 F.3d 519, 528-29 (9th Cir. 2014). The Eighth Circuit expressly upheld an ALJ's determination that 30,000 jobs constitute a significant number in the national economy. *Long v. Chater,* 108 F.3d 185, 188 (8th Cir. 1997). The Tenth Circuit implicitly found 11,000 nationally available jobs to be a significant number. *See Rogers,* 312 F. App'x 138, 142 (10th Cir. 2009); *see also Padilla*, 2017 WL 3412089, at *12. And this Court has found 55,600 jobs, 47,500 jobs, and 17,600 jobs to constitute a significant number in the national economy. *See Rodriguez,* 2018 WL 1627209, at *5-6; *King,* 2018 WL 851358, at *12-14; *Garcia,* 2018 WL 1620922, at *5.

Here, relying on testimony from the VE, the ALJ determined that 55,900 is a significant number in the national economy. AR at 878. "[T]he Court does not now 'presume to interpose [its] judgment for that of the ALJ.'" *Garcia*, 2018 WL 1620922, at *5 (citing *Trimiar*, 966 F.2d at 1332). The Court finds that substantial evidence supports the ALJ's determination on this point and will deny the Motion on this issue.

**B.     Even if the ALJ failed to include certain function-by-function assessments in the RFC, such errors are harmless, and the RFC is supported by substantial evidence.**

Plaintiff argues that the ALJ failed to engage in a proper function-by-function assessment in three different areas when formulating the initial RFC. An "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." *Sedillo-Romero v. Colvin*, No. 1:14-CV-00821-LF-SMV, 2016 WL 10257482, at *4 (D.N.M. May 12, 2016) (quoting SSR 96-8p, 1996 WL 374184 at *1 (July 2, 1996)). "This means the ALJ must consider how the claimant's impairments affect [his] physical abilities, mental abilities, and other abilities." *Id.* SSR 96-8p explains that, at Step Five of the sequential evaluation process, while the

> RFC must be expressed in terms of, or related to, the exertional categories . . . , in order for an individual to do a full range of work at a given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level.

1996 WL 374184, at *3.

"However, the Tenth Circuit [has more] recently held that omission of the formulaic analysis set forth in SSR 96-8p can be harmless provided that the ALJ's decision discusses and addresses any pertinent limitations and is otherwise supported by substantial evidence." *Ryan v. Colvin*, No. CV 15-0740 KBM, 2016 WL 8230660, at *8 (D.N.M. Sept. 29, 2016) (discussing *Hendron v. Colvin*, 767 F.3d 951, 954-57 (10th

Cir. 2014) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.") (internal quotation omitted)).

### 1. Seven Strength Demands

In the ALJ's initial RFC determination, she found that prior to June 1, 2015, Plaintiff could "sit for approximately six hours in an eight-hour workday and stand or walk for no more than two hours in an eight-hour workday." AR at 873. In her second RFC determination, she further found that beginning on June 1, 2015, Plaintiff also "requires the option to alternate between sitting and standing at will." AR at 876. Plaintiff argues that the ALJ failed to include a function-by-function analysis of Plaintiff's need to change positions in her initial RFC, and that if she had included that analysis, the "first RFC would have demonstrated that [Plaintiff] was not capable of performing even sedentary work." *Doc. 22* at 2.

When assessing physical abilities, the ALJ must consider the "seven strength demands: Sitting, standing, walking, lifting, carrying, pushing and pulling." SSR 96-8P, 1996 WL 374184 at *5; *see also* 20 C.F.R. § 416.945(b). "Each function must be considered separately . . . , even if the final RFC assessment will combine activities . . . ." SSR 96-8P, 1996 WL 374184 at *5. However, the Tenth Circuit in *Hendron* has made clear that the ALJ does not have to include a formulaic analysis of each strength demand "so long as it is apparent that the ALJ considered the applicable strength demands." *Ryan*, 2016 WL 8230660, at *8 (citing *Hendron*, 767 F.3d at 957).

In *Hendron*, the plaintiff argued that the ALJ's omission of the function-by-function assessment resulted in his omission of the plaintiff's inability to sit for six hours during an eight-hour workday when formulating the RFC. 767 F.3d at 956. Had the ALJ engaged in the proper analysis, the plaintiff argued, he would have not found that she retained the capacity to perform a full-range of sedentary work. *Id.* The Tenth Circuit acknowledged the importance of a formal articulation of an applicant's strength demands in some cases. *Id.* (discussing SSR 96-8p, 1996 WL 374184 at *3). The court concluded, however, that the omission was harmless in Ms. Hendron's case because the ALJ considered the medical evidence the plaintiff relied on and discounted it. *Id.* at 957. Accordingly, the Tenth Circuit held that "the ALJ did not overlook [the plaintiff's] problems with sitting; [but, rather] he found that the evidence did not support any limitation on her ability to sit . . . ." *Id.* The ALJ's analysis in this case is analogous.

Here, the ALJ included in the second RFC that, beginning on June 1, 2015, Plaintiff requires the option to alternate between sitting and standing at will. AR at 876. This limitation is not included in the initial RFC. AR at 873. The ALJ explained that she "adjusted the [RFC] assessment to include a sit/stand option" because "the record from mid-June 2015 onward contains more objective evidence of spinal degeneration, supporting retention of a sedentary exertional level . . . ." AR at 877. Comparatively, when discussing the initial RFC, the ALJ found that "the varieties of radiological imaging employed found nothing remarkable in either [Plaintiff's] abdomen or his back." AR at 876. Specifically, the ALJ noted that "2012 x-rays of the lumbar spine found mild scoliosis and mild degeneration at T12-L1 but were generally unremarkable." AR at 874 (citing AR at 519-29). Further, the ALJ reviewed an MRI from a year later that also

"found no evidence of significant disc bulge, protrusions or compression deformity." AR at 874 (citing AR at 616). In 2013, Dr. Zieser indicated that Plaintiff must periodically alternate sitting and standing. AR at 623. However, the ALJ discounted this opinion for a variety of reasons, including treatment history, internal inconsistency, and reliance on subjective complaints. AR at 874-75.

As in *Hendron*, the Court here finds that "the ALJ did not overlook" any alleged problems with Plaintiff's need to alternate sitting and standing; rather, the ALJ "found that the evidence did not support" that need prior to June 1, 2015. *See Hendron*, 767 F.3d at 957. While ALJ Farris did not include a formulaic analysis of sit/stand alternation for the initial RFC, it is apparent she considered that strength demand, and her initial RFC is supported by substantial evidence. *See Ryan*, 2016 WL 8230660, at *8.

Further, the only evidence Plaintiff presents to show that the initial RFC should be more restrictive is Plaintiff's testimony and his movement during the hearings. *Doc. 19* at 13-14. But the ALJ considered his testimony and discounted it. *See* AR at 873-74, 876. Plaintiff does not question the ALJ's credibility determination. The lack of medical evidence to support a more restrictive initial RFC "is fatal to [Plaintiff's] claim." *See Ryan*, 2016 WL 8230660, at *9 (citing *Wall*, 561 F.3d at 1067-68; *Rose v. Colvin*, 634 F. App'x. 632, 637 (10th Cir. 2015)). The Court will deny Plaintiff's Motion on this issue.

### 2. Non-Exertional Mental Limitations

Plaintiff next asserts that the ALJ erred by not including a function-by-function assessment of his non-exertional limitations. *Doc. 20* at 19. An ALJ must consider all of the following when assessing a claimant's mental abilities:

When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental abilities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

*Sedillo-Romero*, 2016 WL 10257482, at *4 (citing 20 C.F.R. §§ 404.1545(c), 416.945 (c)). "The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must 'express those impairments in terms of work-related functions or [w]ork-related mental activities.'" *Id.* (quoting *Jaramillo v. Colvin*, 576 F. App'x. 870, 876 (10th Cir. 2004)).

Plaintiff criticizes the ALJ for failing to conduct a function-by-function analysis of the non-exertional limitations opined by Dr. Zieser and LPCC Schwope. Dr. Zieser filled out a Medical Assessment in May 2013, opining that Plaintiff had moderate limitations in maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance and being punctual, sustaining an ordinary routine without special supervision, and working in coordination with/or proximity to others without being distracted by them. AR at 622. He also opined that Plaintiff had marked limitations in making simple work-related decisions and completing a normal workday and workweek without interruptions from pain or fatigue-based symptoms. AR at 622. Similarly, LPCC Schwope opined that Plaintiff is moderately limited in his ability to carry out very short and simple instructions or detailed instructions, work in coordination with/or proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and maintain socially appropriate behavior

and adhere to basic standards of neatness and cleanliness. AR at 1392-93. LPCC Schwope found Plaintiff to be markedly limited in his ability to maintain attention and concentration for extended periods of time, perform activities within a schedule, maintain regular attendance, and be punctual, make simple work-related decision, and complete a normal workday and workweek without interruptions from psychological-based symptoms. AR at 1392.

The ALJ did not conduct a function-by-function analysis regarding most of these restrictions. *See* AR at 873 (finding only that Plaintiff could have occasional interactions with the public). However, "as in *Hendron*, the Court is able to follow the ALJ's reasoning in arriving at the mental restrictions in the RFC, even absent an explicit function-by-function analysis." *Aguilar v. Berryhill*, No. 15-CV-0896 SMV, 2017 WL 1380643, at *6 (D.N.M. Mar. 31, 2017). The ALJ gave little weight to both the opinions of Dr. Zieser and LPCC Schwope. She concluded that Dr. Zieser's medical source statement was "bizarre," explaining that "the pictures [Dr. Zieser] painted in his treatment notes versus the medical statement were night and day, displaying profound internal inconsistency." AR at 874. She further noted that "[t]his extends into mental health as well, where Zieser is no specialist and provided no treatment but checked 'marked' problems with making simple decisions without providing any underlying rationale." AR at 874. When determining Plaintiff's severe impairments, ALJ Farris further determined that "[b]ecause Swope [sic] failed to properly distinguish between physical and mental effects and is inconsistent with statements from providers who see [Plaintiff] more regularly, he receives little weight." AR at 872.

Instead, ALJ Farris noted that, initially and upon reconsideration, state medical consultants found Plaintiff has no severe mental impairments. AR at 873 (citing AR at 1375, 490, 500). It is clear to the Court that the ALJ considered Plaintiff's mental limitations and found no evidence to support more than a limitation in interactions with the public. Again, as in *Hendron*, the Court finds that "the ALJ did not overlook" any alleged mental limitations, but "found that the evidence did not support" limitations in that area. *See Hendron*, 767 F.3d at 957. Accordingly, any omission of the function-by-function analysis was harmless.

Further, Plaintiff does not specify the function-by-function assessment of which mental limitations would have led to a more restrictive RFC. The lack of medical evidence to support a more restrictive initial RFC "is fatal to [Plaintiff's] claim." *See Ryan*, 2016 WL 8230660, at *9 (citing *Wall*, 561 F.3d at 1067-68; *Rose*, 634 F. App'x. at 637). The Court will deny Plaintiff's Motion on this issue.

### 3. Obesity

Lastly, Plaintiff asserts that, despite the multiple assessments in the record that his obesity contributed to his medical problems, the ALJ failed to include the functionally limiting effects of obesity into the initial RFC. *Doc. 19* at 15, 17. Obesity must be considered in assessing a claimant's RFC as it "can cause a limitation of function," and "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." *See* SSR 02-1p, 2002 WL 34686281 at *6; *id.* at *7 ("When we identify obesity as a medically determinable impairment . . . we will consider any functional limitation resulting from the obesity in the RFC assessment[.]"); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 ("[W]hen determining whether an individual with

obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.")  "[T]he ALJ may 'not make assumptions about the severity or functional effects of obesity combined with other impairments' but instead must 'evaluate each case based on the information in the case record.'" *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015).

Plaintiff relies on *DeWitt v. Astrue*, 381 F. App'x 782, 784-86 (10th Cir. 2010). In *DeWitt*, the ALJ mistakenly cited a doctor's opinion in discounting the claimant's obesity, when that doctor never discussed the claimant's obesity in the first place. *Id.* at 785. In attempting to salvage the ALJ's opinion, the Commissioner argued that the ALJ considered the claimant's obesity by restricting her to sedentary work with restrictions. *Id.* But, as the Tenth Circuit recognized, "there [was] nothing in the decision indicating how or whether [the claimant's] obesity influenced the ALJ in setting those restrictions." *Id.* The same is not true here.

Here, the ALJ found Plaintiff's obesity to be a severe impairment at Step Two. AR at 871. At Step Three, the ALJ "considered the effects of obesity in accordance with [SSR] 02-1p," reviewing Listings 1.00Q, 3.00L, and 4.00F, but "conclude[d] that the combined effects of obesity with the other medically determinable impairments do not meet or equal any of the listed requirements." AR at 873. The ALJ then discussed Plaintiff's obesity in the initial RFC assessment, noting that Plaintiff testified to chronic pain related to diabetes, obesity, and spinal degeneration. AR at 873. Plaintiff further testified that he drives "only short distances lest pain in his back and sides become too

intense. He lives alone but alleged having a caregiver for the past 4-5 years who spends approximately two hours a day assisting with household chores. Other than swimming classes now completed, he participates in little physical activity." AR at 873-74.

The ALJ further discussed the opinions of multiple medical providers, summarizing that

> [o]utside of the unsupportable limitations proffered by Zieser, no source put restrictions on [Plaintiff's] activities. Just the opposite, in fact. Recognizing obesity as, potentially, the fundamental problem, they consistently encouraged more exercise, and [Plaintiff] displayed a degree of functionality while attending swimming classes. [Plaintiff] also reported positive responses to several medications: Librax and Carafate for abdominal discomfort and Norflex, a muscle relaxant, for his back.

AR at 876. Based on this analysis, the ALJ surmised that Plaintiff's initial RFC could include minimal restrictions. AR at 876. However, she also considered Plaintiff's subjective complaints of pain and limited his initial RFC to a restricted range of the sedentary exertional level. AR at 876. This discussion counters Plaintiff's claim that the ALJ did not consider the effects of his obesity in formulating the initial RFC.

Further, Plaintiff points to nothing to indicate that his obesity limited his ability to perform a restricted range of sedentary work. *See e.g.*, *Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) ("Claimant does not discuss or cite to medical evidence about other areas which were impacted by her obesity."); *Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011) ("Moreover, Mr. Arles does not discuss or cite to any evidence showing that obesity further limited his ability to perform a restricted range of sedentary work."); *Smith*, 625 F. App'x at 899 (holding the ALJ is not required to discuss the absence of evidence that obesity resulted in additional functional limitations).

Plaintiff does cite to Dr. Zieser's opinion to argue that "the records contained multiple assessments in which obesity was determined to be a contributing factor in [his] medical problems." *Doc. 19* at 17. Indeed, in February 2013, Dr. Zieser opined that Plaintiff's obesity caused associated symptoms including abdominal pain. AR at 592. But he also noted that Plaintiff's abdominal pain was much improved with new medications, Librax and Carafate. AR at 592. Plaintiff also points to Dr. Sawyer's conclusion that if Plaintiff lost weight he could control his diabetes and it would be easier for him to be employed, helping to improve his depression. AR at 1726. Dr. Sawyer further opined that Plaintiff could not sit or stand for very long, and lifting, pushing, and pulling heavy objects "is almost impossible" for a man of his height and weight. AR at 1723. However, Dr. Sawyer still put Plaintiff on a walking-based exercise schedule. AR at 1718. The ALJ properly considered both these opinions in formulating the initial RFC that Plaintiff could only perform a restricted range of sedentary work. AR at 874-76. Plaintiff's Motion is denied on this issue.

## V.     Conclusion

The Court finds that the ALJ did not need to conduct a *Trimiar* analysis and that substantial evidence supports the ALJ's finding that jobs Plaintiff could have performed existed in significant numbers in the national economy. The Court further finds that Plaintiff's initial RFC is supported by substantial evidence, and any failure by the ALJ to include function-by-function assessments is harmless.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 19)* is **denied**. The Court will enter a final order

pursuant to Rule 58 of the Federal Rules of Civil Procedure affirming the decision of the

Acting Commissioner and dismissing this action with prejudice.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent